IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>Tessemae's LLC,<br><br>　　　　　　　　　　Debtor.<br>TESSEMAE'S LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DEMOCRACY CAPITAL CORPORATION,<br><br>　　　　　　　　　　Defendant. | (Chapter 11)<br><br>Case No. 23-10675(NVA)<br><br><br><br><br>Adv. Case No. 23-00039 |

**DEMOCRACY CAPITAL CORPORATION'S MOTION TO DISMISS DEBTOR'S COMPLAINT (1) TO DETERMINE VALIDITY, PRIORITY, OR EXTENT OF LIEN PURSUANT TO 11 U.S.C. § 506(d); (2) OBJECTION TO ALLOWANCE OF CLAIM PURSUANT TO BANKRUPTCY RULE 3007; (3) FOR AVOIDANCE OF INCURRENCE OF DEBT AS FRAUDULENT PURSUANT TO 11 U.S.C. §§ 544 AND 550; (4) FOR EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(c); (5) FOR MONETARY DAMAGES FOR BREACH OF CONTRACT; AND (6) INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS AND FOR RELATED RELIEF**

Democracy Capital Corporation ("Democracy"), by its attorneys Joyce A. Kuhns and Offit Kurman, P.A., submits this Motion to Dismiss Debtor's Complaint (1) to Determine Validity, Priority, or Extent of Lien Pursuant to 11 U.S.C. § 506(d); (2) Objection to Allowance of Claim Pursuant to Bankruptcy Rule 3007; (3) for Avoidance of Incurrence of Debt as Fraudulent Pursuant to 11 U.S.C. §§ 544 and 550; (4) For Equitable Subordination Pursuant to 11 U.S.C. § 510(c); (5) For Monetary Damages for Breach of Contract; and (6) Intentional Interference with Business Relations and for Related Relief ("Motion"), pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) made applicable to adversary proceedings by

Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b), and Bankruptcy Rule 3007, and, in the alternative, to stay this proceeding under 11 U.S.C. § 105(a), and, in support, states:

## I.     JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this adversary proceeding pursuant to 27 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409. This matter is a core proceeding as defined by 28 U.S.C. § 157.

2.     The relief sought in this Motion is based on Sections 105(a), 305, 502(b), 506(d), 510(c), 544 and 550 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rules 7012(b) and 3007.

## II.     STANDARD OF REVIEW

3.     Rule 12(b)(6) of the Federal Rule of Civil Procedure, made applicable to adversary proceedings by Bankruptcy Rule 7012(b), provides the means by which a party may seek dismissal of an adversary proceeding on the grounds that the plaintiff has failed to state a claim upon which relief can be granted. *Krigel v. Noble, et al.* (*In re Am. Energy Trading, Inc.*), 291 B.R. 159, 162, (Bankr. W.D. Mo. 2003) (*citing* Fed. R. Civ. P. 12(b)(6)). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of the defenses. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). When ruling on a motion to dismiss, the court must "accept the well-plead allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States, et al.*, 120 F.3d 472, 473-74 (4th Cir. 1997).

### III. BACKGROUND

**A.    The Loan.**

4.    In early 2018, Tessemae's LLC ("Tessemae's") needed financial rescue. At that time, there were nearly 20 discrete matters of pending and threatened litigation against Tessemae's with a combined total of over $2,000,000 in dispute. Tessemae's also had over $4,100,000 due and owing to vendors and suppliers, of which over $2,900,000 was more than 90 days overdue. It was on the verge of being sued by several of its members and had admitted committing various breaches of the terms of its senior secured financing from Howard Bank. In desperate need of a lifeline, Tessemae's requested a multimillion-dollar loan from Democracy.

5.    Democracy and Tessemae's agreed to a modification of certain Howard Bank loans to Tessemae's that consolidated and increased the combined principal amounts of those loans to $3,000,000 (as consolidated, the "Loan"). The modified terms of the Loan were evidenced by the Second Amended and Restated Loan and Security Agreement dated April 10, 2018 (the "Loan Agreement") (Complaint, Exhibit "Ex." 1), and the Consolidated, Amended and Restated Promissory Note (the "Note") dated April 10, 2018 from Tessemae's to the order of Democracy in the principal amount of $3,000,000 (Complaint, Ex. 2).

6.    Gregory and Genevieve Vetter (the "Vetters") entered into an absolute, unconditional Guaranty of all obligations to Democracy under the Loan Agreement on April 10, 2018 (the "Guaranty").

7.    Democracy duly perfected its first priority security interests under the Loan in substantially all of Tessemae's assets with the filing of a UCC Financing Statement on April 11, 2018.

8. In order to ensure the first priority position of Democracy's liens under the Loan, in connection with the Loan Agreement, 25 of Tessemae's existing investor lenders entered into separate Subordination Agreements in favor of Democracy (the "Subordinating Creditors") executed by each Subordinating Creditor and Tessemae's, as borrower. A copy of the April 10, 2018 Loan Closing Index is attached and incorporated in this Motion as **Ex. 1** listing the Subordinating Creditors at Tabs 24 and 25 of the Index. A sample copy of a Subordination Agreement of Robert McDermott is attached to this Motion as **Ex. 2**[1].

9. The Note provides that, upon maturity, Tessemae's must pay an exit fee equal to $7,500,000 (the "Exit Fee") or, if certain conditions were satisfied and no default existed, Tessemae's could issue a warrant, providing, among other things, the holder the right to receive a 5.00% ownership interest in Tessemae's, with a minimum value of $7,500,000, senior in all respects to other equity. *See* Complaint Ex. 2, §1.

10. Following numerous defaults and despite Democracy's fruitless efforts to work with Tessemae's to resolve these breaches Democracy sent a formal notice of default to Tessemae's on February 21, 2020.

11. The Loan matured on April 10, 2020. Tessemae's has never delivered to Democracy either the Exit Fee or a warrant that was duly authorized or that satisfied the terms of the Note.

---

[1] A court may consider extrinsic documents attached to a Motion to Dismiss without converting it to a Motion for Summary Judgment "so long as they are integral to the complaint and authentic." *Amand v. Ocwen,* F.3d 195, 198 (4th Cir. 2014) (further citations omitted). When such a document is "properly considered in the context of the motion to dismiss and it conflicts with the bare allegations of the complaint, the document prevails." *Atlantic Builders Grp., Inc. v. Old Line Bank (In re Prince Frederick Invs., LLC)*, 516 B.R. 778, 782 (Bankr. D. Md. 2014) ("*Atlantic Builders*") (citations omitted).

B.     **The State Court Action.**

12.    On November 11, 2020, Democracy filed a Complaint for Confessed Judgment against Tessemae's under the Note and against the Vetters under the Guaranty in the Circuit Court for Baltimore County, Maryland (the "State Court"), commencing case no. C-03-CV- 20-004048 (the "State Court Action")[2]. A Confessed Judgment was entered against all defendants on November 12, 2020.  Subsequently a Motion to Vacate Confessed Judgment as to all defendants was filed in the State Court Action, which was granted by order dated May 10, 2022.

13.    Democracy filed an Amended Complaint in the State Court Action on July 8, 2022. Defendants filed Answers on August 12, 2022.

14.    On September 1, 2022, Democracy filed a Motion for Summary Judgment against all defendants in the State Court Action predicated on certain defaults under the Loan Agreement and Guaranty, which was opposed and denied following argument in open court on December 19, 2022. At the December 19, 2022 hearing, having been advised by Democracy of certain additional and recently-discovered defaults under the Loan Agreement, presiding Judge Truffer directed Democracy to file a Second Amended Complaint if it intended to pursue a second Motion for Summary Judgment.

15.    Thereafter, on September 27, 2022, Tessemae's and the Vetters filed a Counterclaim and Prayer for Jury Trial against Democracy. The Counterclaim has four counts: Breach of Contract (Count I); Breach of Contract Bad Faith (Count II); Defamation (Count III); and Intentional Interference with Business Relationships (Count IV). Democracy filed a Motion to Dismiss Counterclaim and Memorandum in Support on October 24, 2022. Tessemae's filed an Opposition to the Motion to Dismiss on November 8, 2022.

---

[2] The docket for the State Court Action can be found at: https://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseID=C03CV20004048&loc=55&detailLoc= ODYCIVIL

16. On December 23, 2022, Democracy filed a Second Amended Complaint in the State Court Action, along with a Second Motion for Summary Judgment (the "MSJ").

17. The MSJ was argued and fully briefed on an expedited basis in early January, which seeks in excess of $13,000,000.00 as a money judgment against Tessemae's.

18. The MSJ is predicated on, among other things, Tessemae's failure to obtain the prior written consent of Democracy to approximately $20,000,000.00 of additional loan debt Tessemae's incurred after April 10, 2018 in contravention of the express requirement in Section 6.6 of the Loan Agreement and to obtain a written subordination agreement with respect to such prohibited additional indebtedness in form and substance acceptable to Democracy in its sole discretion as mandated by Section 5.4 of the Loan Agreement. The defaults are evidenced by multiple lawsuits with accompanying summary judgment motions, under affidavit, filed in the Circuit Court for Baltimore County in late November and early December 2022 against Tessemae's by multiple defaulted lenders. Tessemae's opted to defend none of the other lender lawsuits.

C. **The Bankruptcy Case.**

19. On February 1, 2023 (the "Petition Date"), Tessemae's filed its voluntary Petition under Chapter 11 of the Bankruptcy Code, commencing this bankruptcy case (the "Bankruptcy Case"). The filing of the Bankruptcy Case invoked the automatic stay of Section 362(a) as to the State Court Action against Tessemae's only.

20. Nonetheless, on February 6, 2023, Tessemae's filed a Suggestion of Bankruptcy in the State Court Action asserting that the State Court Action itself was stayed as a result of the Tessemae's Bankruptcy Case.

21.     On February 6, 2023, an Interim Order (I) Authorizing and Approving Postpetition Secured Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, (III) Authorizing Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Scheduling Interim and Final Hearings (the "Interim Order") was entered in the Bankruptcy Case [Bankruptcy Case, ECF No. 29] authorizing, on an interim basis, the terms and conditions of a DIP Credit Facility in favor of TESSE DIP FUND I, LLC.

22.     A Final Order (I) Authorizing and Approving Postpetition Secured Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, and (III) Authorizing Use of Cash Collateral (the "Final Order") entered in the Bankruptcy Case on February 16, 2023 [Bankruptcy Case, ECF No. 48] authorizing the terms and conditions of final DIP financing in favor of TESSE DIP FUND I, LLC.

23.     Both the Interim Order and Final Order recognize the first priority lien of Democracy pending the determination by a court of competent jurisdiction as to amount of the underlying debt Tessemae's owes Democracy and the validity of its lien priority. *See* Bankruptcy Case, ECF No. 29 at ¶¶ 2.1.1, 2.1.2, and 2.2; ECF No. 48 at ¶¶ 2.1.1, 2.1.2, and 2.2.

24.     On February 9, 2023, Tessemae's filed an adversary proceeding in this Court [Bankruptcy Case, ECF No. 39], assigned Adversary Case No. 23-00039 (the "Adversary Proceeding"). Counts I-II and IV-VI of the Adversary Proceeding will fail if the State Court finds Tessemae's defaulted under the Loan Agreement by incurring millions of dollars of loan debt to other lenders in violation of the Loan Agreement, as asserted in the MSJ pending in State Court.

25.     On February 22, 2023, Democracy filed a Motion for Relief from Stay to Allow State Court Action to Proceed to Judgment and for Defense of Counterclaim and Related Relief.

Tessemae's filed a response on February 27, 2023 [Bankruptcy Case, ECF No. 55]. The Lift Stay is noticed and scheduled for hearing on April 6, 2023 [Bankruptcy Case, ECF No. 84].

26. On March 9, 2023, Tessemae's filed its Schedules of Assets and Liabilities [Bankruptcy Case, ECF No. 75] and Statement of Financial Affairs [Bankruptcy Case, ECF No. 76] in the Bankruptcy Case.

27. No bar date in for filing proofs of claim has been set in the Bankruptcy Case.

### IV.    RELIEF REQUESTED

28. The Complaint contains six counts: Count I - Determination of the Validity, Priority, or Extent of DCC's Lien; Count II - Objection to Allowance of DCC's Claim under 11 U.S.C. § 502(b) pursuant to Bankruptcy Rule 3007; Count III - Avoidance of Incurrence of Debt as Fraudulent pursuant to 11 U.S.C. §§ 544 and 550; Count IV - Equitable Subordination of DCC's Claims pursuant to 11 U.S.C. § 510(c); Count V - Breach of Contract and the Covenant of Good Faith and Fair Dealing; and Count VI - Intentional Interference with Business Relations pursuant to 11 U.S.C. § 506(d). Each Count is fatally defective and the Complaint must, therefore, be dismissed.

29. In the alternative, if the Court denies such relief, Defendant requests that the Adversary Proceeding be stayed, pending a ruling by the State Court in the State Court Action, pursuant to Section 105(a) of the Bankruptcy Code, in the interest of creditors and the estate, to avoid the unnecessary delay and expense or relitigating matters already briefed and heard in the State Court Action. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of action on its own docket with economy of time and effort

for itself, for counsel, and for litigants." (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones,* 520 U.S. 681, 706-08 (1997).

## V.   ARGUMENT

### Count I - Determination of the Validity, Priority, or Extent of DCC's Lien Pursuant to 11 U.S.C. § 506(d).

30.     Tessemae's contends that it paid the debt due Democracy under the Loan Agreement, in full, in the spring of 2020 by issuing a warrant and, therefore, this Court should determine Democracy has no valid lien[3]. As noted in Democracy's analysis of the defects in Count II below, Democracy has filed no claim in this Bankruptcy Case. Therefore, a determination that no debt is owed to support its underlying first priority lien is premature at this time and not ripe for consideration and Count I should be dismissed. *See In re Dembo,* 126 B.R. 195, 198 (Bankr. E.D.Pa. 1981) (filing proof of claim required for lien avoidance); *see also Painter v. First Fed. Sav. and Loan Ass'n of South Carolina (In re Painter)*, 84 B.R. 59, 62 (Bankr. W.D.Va. 1988) ("*Painter*").

### Count II - Objection to Allowance of DCC's Claim under 11 U.S.C. § 502(b) Pursuant to Bankruptcy Rule 3007.

31.     In Count II, Tessemae's attempts to disallow Democracy's claim pursuant to Bankruptcy Rule 3007. It is undisputed that no bar date has been set in this Bankruptcy Case. It is undisputed that Democracy has not filed a proof of claim under Bankruptcy Rule 3001 in this Bankruptcy Case. Moreover, Tessemae's claims rest on whether it was in default under the Loan Agreement and Democracy's actions were permitted as a secured lender under state law, which has yet to be put forth in a proof of claim. Where a dispute includes predominantly state law issues, an objection to claim is premature where no judgment has entered or proof of claim has

---

[3] *See supra* ¶ 42 for further explication of Tessemae's eligibility to issue a warrant in lieu of paying the Exit Fee.

been filed. *See In re DHP Holdings II Corp.*, 435 B.R. 220, 226 (Bankr. D. Del. 2010); *Painter*, 84 B.R. at 62; *see also In re Worldwide Direct, Inc.,* No. 99–108, 2000 WL 33712474 (Bankr. D. Del. Nov. 22, 2000). Because Count II is premature, it must be dismissed.

**Count III - Avoidance of Incurrence of Debt as Fraudulent Pursuant to 11 U.S.C. §§ 544 and 550.**

32. In this Count, Tessemae's invokes §§ 544(b)(1) and 550 of the Bankruptcy Code and the Commercial Law Article of the Annotated Code of Maryland §§ 15-201, *et seq*. to attempt to avoid the incurrence of debt under the Loan Agreement, dated April 10, 2018, to the extent fraudulent under the Maryland statute.

33. Having elected to proceed under Maryland law, Tessemae's is bound by the "lookback" period under Maryland law, which is three years instead of the two-year period provided under the Bankruptcy Code. *Compare* MD. CTS. & JUD. PROC. § 5-101 with § 548 of the Bankruptcy Code. *See In re Laurie*, 2008 WL 886121, * 4-5 (Mar. 28, 2008) (noting fraudulent transfer suits filed in Maryland bankruptcy court invoking Maryland law are bound by Maryland's three-year lookback).

34. Undisputedly, the obligations that Tessemae's seeks to avoid were incurred in April 2018 significantly **more than three years** prior to February 9, 2023, the date of the filing of the Complaint. Because the statutory predicates for avoidance of the debt under the Loan Agreement as fraudulent cannot be satisfied, Count III fails and should be dismissed with prejudice.

**Count IV - Equitable Subordination of DCC's Claims pursuant to 11 U.S.C. § 510(c).**

35. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Atlantic Builders*, 516 B.R. at 781. The court in *Atlantic Builders* held that equitable subordination requires: (i) the claimant

must have engaged in some type of inequitable conduct; (ii) the conduct must have resulted in injury to the creditors of the bankruptcy or conferred an unfair advantage on the claimant; and (iii) equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code. *Id*. at 782. The severity of the conduct depends on whether the claimant owed a fiduciary duty to the debtor and the debtor's creditors. *Id*., citing *Badge Freightways, Inc. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago, (In re Optim Energy LLC)*, 106 B.R. 971, 975 (Bankr. N.D Ill. 1989) *("Badger Freightways")*. For a secured lender to be a fiduciary to borrower/debtor, the debtor must demonstrate it had dominion and control over the debtor, which Tessemae's failed to plead in its Complaint. *Atlantic Builders*, 516 B.R. at 784, citing *Badger Freightways*, 106 B.R. at 976.

36. Since Democracy owed no fiduciary duty to Tessemae's, it must have been engaged in conduct that "shocks the conscience" of the court to subject its claim to subordination. *Id*. at 783. No such allegations have been made here and would not be supported by the record.

37. There are no facts alleged that Democracy took unfair advantage of creditors. In fact, a substantial portion of the debt listed in Tessemae's Schedules D and E/F are with respect to separate loans entered into in violation of Sections 6.6 (prohibiting additional loan debt without prior written lender approval) and 5.4 of the Loan Agreement (requiring subordination agreements acceptable to lender for additional debt)[4] and/or are the subject of separate Subordination Agreements with Democracy[5]. While it appears no creditor was taken unfair advantage of by Democracy, certain creditors appear to have disregarded their obligations to

---

[4] *See* Schedule E/F: 3.19, 3.25, 3.47, 3.62, 3.71, 3.75, 3.95, 3.98, 3.99, 3.113, 3.175.
[5] *See* Schedule D: 2.1, 2.4, 2.5, 2.6; Schedule E/F: 3.29, 3.48, 3.54, 3.60, 3.118, 3.121, 3.125, 3.138, 3.140, 3.151, 3.152, 3.157, 3.159.

Democracy under their respective Subordination Agreements in continuing to advance loans to Tessemae's.

38. Furthermore, Democracy did not take unfair advantage of Tessemae's. In fact, Tessemae's entered into similar and in some instances more stringent terms with other lenders including accelerated maturity dates and enhanced exit fees. *See* Emergency Motion of the Debtor and Debtor-in-Possession Authorizing and Approving Postpetition Secured Financing [Bankruptcy Case, ECF No. 9] at ¶¶ 15-22 including footnotes.

39. Count IV therefore fails to state a cognizable claim for equitable subordination against Democracy and should be dismissed.

**Count V - Breach of Contract and the Covenant of Good Faith and Fair Dealing.**

40. Count V alleges that Democracy breached the Loan Agreement and violated the covenant of good faith and fair dealing; however, Tessemae's expressly waived the alleged claims in Count V pursuant to Section 9.2 of the Loan Agreement, which states:

> Lender, **by the acceptance and performance of this Agreement**, does not assume any liability, and Borrower hereby releases Lender and Lender's agents, employees and attorneys from any such liability (excluding any liability caused directly by the gross negligence or willful misconduct of Lender or Lender's agents, employees or attorneys), and no such claim shall be made by Borrower upon Lender or such employees or agents for or on account of any matter or thing **in excess of the outstanding principal balance of the Loan**.

*See* Exhibit 1 to Complaint, § 9.2 (emphasis added).

41. Thus, the terms of the Loan Agreement itself ban Tessemae's from seeking to enforce any alleged breach of contract or implied covenant of good faith and fair dealing claims. *See Enfield Equip. Co. v John Deere Co.*, 64 F. Supp. 2d 483, 486 (D. Md. 1999) (holding that "the implied duty of good faith and fair dealing in Maryland is of limited scope and only operates where it would not contradict a contract's express terms.") Moreover, Maryland does

not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing. *See Baker v. Sun Co.*, 985 F. Supp. 609, 610 (D. Md. 1993).

42. Furthermore and undisputedly, Tessemae's does not allege (as it cannot) that it made its final payment or tendered its purported warrant with a reservation of rights. Tessemae's tendered and Democracy accepted the final cash payments, foreclosing additional damages by Tessemae's. Tessemae's persists in arguing that it was eligible to issue a warrant in lieu of the $7.5 million Exit Fee due on the Maturity Date of the Loan. Under the Note, Tessemae's was only eligible to issue a warrant in lieu of the Exit Fee if it was not in default under the Loan Agreement. *See* Complaint, Ex. 1, ¶ 1.5. As evidenced by Tessemae's Schedules in this Bankruptcy Case, it entered into millions of dollars in loans prior to tendering the purported warrant, without obtaining the prior written consent of Democracy required under Section 6.6 of the Loan Agreement, and without obtaining a Subordination Agreement in favor of and acceptable to Democracy as mandated by Section 5.4 of the Loan Agreement. By Tessemae's own admissions, therefore, it engaged in multiple, now uncurable, defaults prior to the Maturity Date under the Loan Agreement.

43. Because Tessemae's has not articulated an enforceable breach of contract or violation of covenant of good faith and fair dealing claim against Democracy and waived such claims in the Loan Agreement, Count V must be dismissed with prejudice.

**Count VI - Intentional Interference with Business Relations pursuant to 11 U.S.C. § 506(d)**

44. Tessemae's complains in Count VI that Democracy tortiously interfered with its business relationships by sending notices to Subordinating Creditors that the Loan was in default and by initiating the State Court Action impairing its ability to raise funds.

45. To prevail on its claim of intentional interference with business relationships, Tessemae's must show: "(1) that [Democracy] has committed intentional and willful acts; (2) calculated to cause damage to [Tessemae's] in its lawful business; (3) done with unlawful purpose of causing such damage, without right or justification; and (4) that actual damage resulted from those acts." *See Fare Deals, Ltd. v. World Choice 12 Travel.com, Inc.*, 180 F. Supp. 2d 678, 691 (D. Md. 2001). To satisfy the unlawful purpose element, Democracy's conduct must be "independently wrongful or unlawful, quite apart from its effect on [Tessemae's] business relationships." *See Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 336 Md. 635, 657 (1994).

46. Here, Democracy sent the letters Tessemae's complains of pursuant to the terms of the Subordination Agreements between Democracy and its Subordinating Creditors[6]. Democracy sent the letters as an exercise of cumulative remedies available to it under the Loan Documents and the Maryland Uniform Commercial Code. *See* Complaint, Ex. 1, ¶ 7.2. Tessemae's cannot and has not alleged that Democracy's conduct was "independently wrongful or unlawful" as the letters were sent pursuant to its separate contractual obligations with counterparties under their respective Subordination Agreements and its rights thereunder as secured lender. In fact, the terms of the Subordination Agreement, which Tessemae's signed, prohibit this claim. *See, e.g.*, Ex. 2 ¶ 3 ("These provisions are intended for the benefit of ... the Subordinating Creditor and Lender only and may not be used ... by Borrower in any proceeding with or against Lender ...").

---

[6] *See, e.g.*, Ex. 2 ¶ 1 (allowing Subordinating Creditors to receive regular payments on Subordinated Debt until Subordinating Creditor receives a notice that a default has occurred under the Loan Agreement) and ¶ 3 (requiring lender to notice Subordinating Creditors of defaults under the Loan Agreement prior to exercising certain remedies).

47. In addition, Democracy's pursuit of a confessed judgment in the State Court was an exercise of its contractual remedies under the Loan Agreement and, therefore, not unlawful. As previously noted, Tessemae's has now admitted in its Schedules to incurring tens of millions of dollars of loan debt, which it previously failed to disclose to Democracy, in violation of the Loan Agreement, and which constituted additional defaults under the Loan Agreement and in the State Court Action. Tessemae's contention that Democracy wrongfully pursued a confessed judgment, therefore, is contradicted by the record. Likewise, Tessemae's contention that Democracy's pursuit of the State Court Action prevented it from raising funds is refuted by the Schedules it filed, under penalties of perjury, in the Bankruptcy Case which demonstrate that Tessemae's raised tens of millions of dollars between April 2018 and the Petition Date, albeit in violation of the Loan Agreement.

48. Tessemae's has not pled and cannot plead all the required elements of intentional interference with business relations. In fact, it is now precluded from doing so by its own Schedules and the Subordination Agreements to which it is a signatory. Therefore, Count VI should be dismissed with prejudice.

## VI.    NO SEPARATE MEMORANDUM OF LAW

49. Democracy files this Motion and relies on the authorities cited herein in lieu of filing a separate Memorandum of Law.

WHEREFORE, Defendant requests that the Court enter an Order in substantially the form attached hereto: (i) dismissing the Complaint or, if such relief is not granted, staying this

Adversary Proceeding pending a ruling by the State Court in the State Court Action; and (ii) granting such other relief as may be just.

Dated: March 16, 2023                    /s/ Joyce A. Kuhns
                                                                 Joyce A. Kuhns, Esq. (03979)
                                                                 OFFIT KURMAN, P.A.
                                                                 300 E. Lombard Street, Suite 2010
                                                                 Baltimore, Maryland 21202
                                                                 Telephone: 410-209-6463
                                                                 Facsimile:  410-209-6435
                                                                 Jkuhns@offitkurman.com

                                                               *Counsel for Defendant Democracy Capital Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 16, 2023, I reviewed the Court's CM/ECF system and it reports that an electronic copy of Democracy Capital Corporation's Motion to Dismiss Debtor's Complaint (1) to Determine Validity, Priority, or Extent of Lien Pursuant to 11 U.S.C. § 506(d); (2) Objection to Allowance of Claim Pursuant to Bankruptcy Rule 3007; (3) for Avoidance of Incurrence of Debt as Fraudulent Pursuant to 11 U.S.C. §§ 544 and 550; (4) For Equitable Subordination Pursuant to 11 U.S.C. § 510(c); (5) For Monetary Damages for Breach of Contract; and (6) Intentional Interference with Business Relations and for Related Relief will be served electronically by the Court's CM/ECF system on the following:

| | |
|---|---|
| Gary H. Leibowitz, Esquire – gleibowitz@coleschotz.com<br>Irving E. Walker – iwalker@coleschotz.com<br>H.C. Jones III – hjones@coleschotz.com<br>Cole Schotz<br>300 East Lombard Street<br>Baltimore, Maryland 21202 | |
| J. Dan Ford, Assistant U.S. Trustee<br>Office of the United States Trustee<br>101 West Lombard Street, Suite 2625<br>Baltimore, MD 21201<br>j.dan.ford@usdoj.gov | Hugh M. Bernstein, Assistant U.S. Trustee<br>Office of the United States Trustee<br>101 West Lombard Street, Suite 2625<br>Baltimore, MD 21201<br>hugh.m.bernstein@usdoj.gov |

Date: March 16, 2023                            /s/ Joyce A. Kuhns
                                                                Joyce A. Kuhns, Esq. (03979)