IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>Tessemae's LLC,[1]<br><br>        Debtor. | (Chapter 11)<br><br>Case No. 23-10675 (NVA) |
| TESSEMAE'S, LLC, DEBTOR AND<br>DEBTOR IN POSSESSION,<br><br>        Plaintiff,<br><br>v.<br><br>DEMOCRACY CAPITAL CORPORATION,<br><br>        Defendant. | Adv. Proc. No. 23-00039 (NVA) |

**PLAINTIFF'S OPPOSITION TO DEMOCRACY CAPITAL CORPORATION'S
MOTION TO DISMISS DEBTOR'S COMPLAINT (1) TO DETERMINE VALIDITY,
PRIORITY, OR EXTENT OF LIEN PURSUANT TO 11 U.S.C. § 506(D);
(2) OBJECTION TO ALLOWANCE OF CLAIM PURSUANT TO BANKRUPTCY
RULE 3007; (3) FOR AVOIDANCE OF INCURRENCE OF DEBT AS
FRAUDULENT PURSUANT TO 11 U.S.C. §§ 544 AND 550; (4) FOR EQUITABLE
SUBORDINATION PURSUANT TO 11 U.S.C. § 510(C); (5) FOR MONETARY
DAMAGES FOR BREACH OF CONTRACT; AND (6) INTENTIONAL
<u>INTERFERENCE WITH BUSINESS RELATIONS AND FOR RELATED RELIEF</u>**

Plaintiff, Tessemae's LLC as Debtor and Debtor-in-Possession (the "**<u>Debtor</u>**" or

"**<u>Plaintiff</u>**"), submits this opposition to Democracy Capital Corporation's Motion to Dismiss

Debtor's Complaint (1) to Determine Validity, Priority, or Extent of Lien Pursuant to 11 U.S.C.

§ 506(d); (2) Objection to Allowance of Claim Pursuant to Bankruptcy Rule 3007; (3) for

Avoidance of Incurrence of Debt as Fraudulent Pursuant to 11 U.S.C. §§ 544 and 550; (4) for

Equitable Subordination Pursuant to 11 U.S.C. § 510(c); (5) for Monetary Damages for Breach

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification are Tessemae's LLC (2871).  The Debtor's principal address is 714 South Wolfe Street, P.O. Box No. 38438, Baltimore, Maryland 21231.

of Contract; and (6) Intentional Interference With Business Relations and for Related Relief (the "**Motion**") filed by Democracy Capital Corporation (the "**Defendant**" or "**DCC**") seeking to dismiss the adversary complaint (the "**Complaint**").[2]   For the reasons set forth below, the Motion should be denied in its entirety.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Complaint.

## <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     STATUS OF THE CASE ............................................................................... 1

III.    ARGUMENT ................................................................................................ 2

      A.      The Motion relies on an attempt to introduce extrinsic evidence that
              cannot be considered when deciding a motion to dismiss. ...................................... 3

      B.      The Motion must be denied because each Count of the Complaint states a
              plausible claim for relief. ...................................... 5

            i.       Count I states a valid claim for determination of the validity,
                  priority, or extent of DCC's lien pursuant to 11 U.S.C. § 506(d).............. 5

            ii.      Count II states a valid objection to allowance of DCC's claim
                  under 11 U.S.C. § 502(b) pursuant to Bankruptcy Rule 3007................... 8

            iii.     Count III states a valid claim for avoidance of incurrence of debt as
                  fraudulent pursuant to 11 U.S.C. §§ 544 and 550.................................... 10

            iv.      Count IV states a valid claim for equitable subordination of DCC's
                  claims pursuant to 11 U.S.C. § 510(c). ..................................................... 13

            v.       Count V states a valid claim for breach of contract and breach of
                  the covenant of good faith and fair dealing. ............................................. 15

            vi.      Count VI states a valid claim for DCC's wrongful and intentional
                  interference with the Debtor's business relations. .................................... 19

IV.     CONCLUSION.......................................................................................... 21

65577/0002-44917884v4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Acequia, Inc.,
34 F.3d 800 (9th Cir. 1994) ..................................................................................10

Anand v. Ocwen Loan Servicing, LLC,
754 F.3d 195 (4th Cir. 2014) .................................................................................4

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ..............................................................................................3

Baker v. Sun Co.,
985 F. Supp. 609 (D. Md. 1993) ..........................................................................17

Barbre v. Pope,
402 Md. 157 (2007) ..............................................................................................16

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ..............................................................................................3

In re Beverages International, Ltd.,
50 B.R. 273 (Bankr. D. Mass. 1985) ...................................................................13

Blankenship v. Manchin,
471 F.3d 523 (4th Cir. 2006) .................................................................................4

Burkhart v. Grigsby,
886 F.3d 434 (4th Circ. 2018) ...............................................................................8

Cooper v. Rodriguez,
443 Md. 680 (2015) ..............................................................................................16

In re Dembo,
126 B.R. 195 (Bankr. E.D. Pa. 1991) ...........................................................6, 7, 8

In re DHP Holdings II Corp.,
435 B.R. 220 (Bankr. D. Del. 2010) .....................................................................9

Edwards v. City of Goldsboro,
178 F.3d 231 (4th Cir. 1999) ...............................................................................20

Enfield Equip. Co. v. John Deere Co.,
64 F. Supp. 2d 483 (D. Md. 1999) .......................................................................16

ii

In re Equipment Acquisition Resources, Inc.,
    742 F.3d 743 (7th Cir. 2014) ...................................................................................10

Fare Deals, Ltd. v. World Choice Travel.com, Inc.,
    180 F. Supp. 2d 678 (D. Md. 2001) .........................................................................19

Lyon v. Eiseman (In re Forbes),
    372 B.R. 321 (6th Cir. BAP 2007).............................................................................10

In re McGee,
    No. 05-33727PM, 2007 WL 1728710 (Bankr. D. Md. June 12, 2007) ..................10

In re McLean,
    498 B.R. 525 (Bankr. D. Md. 2013) ..................................................................11, 12

In re Painter,
    84 B.R. 59 (Bankr. W.D. Va. 1988) .....................................................................7, 8

Presley v. City of Charlottesville,
    464 F.3d 480 (4th Cir. 2006) ....................................................................................2

In re Prince Frederick Inv., LLC,
    516 B.R. 778 (Bankr. D. Md. 2014), as amended (Sept. 9, 2014).....................3, 13

Stratton v. Equitable Bank, N.A.,
    104 B.R. 713 (D. Md. 1989), aff'd, 912 F.2d 464 (4th Cir. 1990).........................13

Warthen v. Smith (In re Smith),
    247 B.R. 191 (D. W.D. Va. 2000) .............................................................................7

Waypoint Mgmt. Consulting, LLC v. Krone,
    2022 WL 2528465 (D. Md. July 6, 2022)................................................................17

In re Wilson,
    359 B.R. 123 (Bankr. E. D. Va. 2006) ...................................................................13

Wolf v. Ford,
    335 Md. 525 .............................................................................................................16

In re Worldwide Direct, Inc.,
    No. 99–108, 2000 WL 33712474 (Bankr. D. Del. Nov.22, 2000) ...........................9

## Statutes

11 U.S.C. § 502(b) .............................................................................................................1, 8

11 U.S.C. § 506(d) ..........................................................................................................passim

11 U.S.C. §506(d)(2) ............................................................................................................8

11 U.S.C. § 510(c) ...................................................................................................1, 2, 13, 15

11 U.S.C. §§ 544 and 550 ...............................................................................................1, 2, 10

11 U.S.C. §544(b) ............................................................................................................10, 13

United States Code title 11 Chapter 11 ....................................................................................1

Annotated Code of Maryland, Section 15-201 *et seq.*, DCC .......................................................11

Bankruptcy Code section 501(c)..............................................................................................6

Bankruptcy Code section 502(d), section 502(b)(1).................................................................9

Bankruptcy Code section 542 ...................................................................................................9

Bankruptcy Code section 544 ....................................................................................10, 11, 12

Bankruptcy Code sections 1107(a) and 1108 ...........................................................................1

Commercial Law Article Title 15 .............................................................................................11

**Other Authorities**

BANKRUPTCY RULE 3007 ...............................................................................................1, 2, 8

Bankruptcy Rule 7012(b)...........................................................................................................2

Fed. R. Civ. P. 8 .......................................................................................................................7

Fed. R. Civ. P. 12(d) ............................................................................................................3, 4

Federal Rule 12(b)(6)..................................................................................................1, 2, 3, 20

Federal Rule 56 .........................................................................................................................4

Federal Rules of Bankruptcy Procedure Rule 7008...................................................................2

Federal Rules of Civil Procedure Rule 8(a)..............................................................................2

65577/0002-44917884v4

## I.    PRELIMINARY STATEMENT

This Adversary Proceeding and the Court's determination of the validity of DCC's claim against the Debtor and the Debtor's claims against DCC, will largely determine the outcome of the Debtor's Chapter 11 case for creditors and equity holders.  As stated in the Complaint: "No action will be more central to the Debtor's efforts to successfully reorganize and to realize the full benefit of its value for the benefit of all stakeholders."  Complaint, at ¶ 1.

Consistent with its scorched-earth litigation tactics in just the first two months of this case, DCC filed the Motion arguing that all of the Counts of the Complaint fail to state a viable claim, based on disregard of the legal standards for a Federal Rule 12(b)(6) motion and the actual allegations in the Complaint, all while citing to cases bearing no resemblance to the present case. As discussed below, each Count of the Complaint sufficiently pleads a valid claim against DCC, and there is no basis to dismiss a single one.

## II.    STATUS OF THE CASE

On February 1, 2023, (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") initiating its chapter 11 case (the "**Chapter 11 Case**," or the "**Main Case**") [Main Case, Doc. No. 1].  The Debtor is operating its businesses and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Case and no official committees have been appointed or designated.

On February 9, 2023, the Debtor initiated the above-captioned adversary proceeding against DCC by filing the Complaint (the "**Adversary Proceeding**") [Adv. Pro., Doc. No. 1], averring six causes of action: (I) Determination of the Validity, Priority, Extent of DCC's Lien pursuant to 11 U.S.C. § 506(d); (II) Objection to Allowance of DCC's Claim under 11 U.S.C. §

1

502(b) pursuant to Bankruptcy Rule 3007; (III) Avoidance of Incurrence of Debt as Fraudulent pursuant to 11 U.S.C. §§ 544 and 550; (IV) Equitable Subordination of DCC's Claims pursuant to 11 U.S.C. § 510(c); (V) Breach of Contract and the Covenant of Good Faith and Fair Dealing; (VI) Intentional Interference with Business Relations.  See Complaint, at pp. 11–16, ¶¶ 36–63.

On February 22, 2023, DCC filed a motion seeking relief from the automatic stay to continue to pursue a judgment against the Debtor in excess of $13,000,000 based on a loan in the initial principal amount of $3,000,000 (the "**Stay Relief Motion**") [Main Case, Doc. No. 51], Stay Relief Motion, at ¶ 19.  The Debtor opposes the Stay Relief Motion, as did certain other affected creditors.  See Main Case, Doc. Nos. 73, 74, 77, 79, and 80.

On March 16, 2023, DCC filed the instant Motion.  [Adv. Pro., Doc. No. 4].  A pretrial conference for the Adversary Proceeding is scheduled to be held on April 5, 2023 at 10:00 a.m.

### III.    ARGUMENT[3]

Rule 8(a) of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to these proceedings through Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Federal Rule 12(b)(6), made applicable to these proceedings through Bankruptcy Rule 7012(b), permits a defendant to file a motion to dismiss "for failure to state a claim upon which relief can be granted."  "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and *not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses*."  Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (emphasis added) (internal quotations omitted).  Accordingly, at the

---

[3] To avoid duplicating facts already before the Court, the Plaintiff relies upon the detailed background set forth in the Complaint stating Plaintiff's claims against Defendant.  (See Compl. ¶¶ 1-35).

motion to dismiss stage, a court generally cannot consider factual allegations outside of the complaint or extrinsic documents introduced by attachment to the motion to dismiss. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment.").

As highlighted in the Supreme Court's rulings in Twombly and Iqbal, a complaint is not required to contain detailed factual allegations and should survive a motion to dismiss where it presents "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) ("***Iqbal***") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ("***Twombly***")). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." In re Prince Frederick Inv., LLC, 516 B.R. 778, 781 (Bankr. D. Md. 2014) ("***Prince Frederick***"), as amended (Sept. 9, 2014) (internal quotations omitted). Prince Frederick, 516 B.R. at 782. In conducting its analysis, "the court must accept the well-pled allegations of the complaint as true, and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Prince Frederick, 516 B.R. at 782.

A.     **The Motion relies on an attempt to introduce extrinsic evidence that cannot be considered when deciding a motion to dismiss.**

The Motion ignores the mandate of Federal Rule 12(b)(6) and the Supreme Court by attempting to introduce extrinsic allegations and documents that are not mentioned in the Complaint and not integral to the claims raised therein. The general rule is that such extrinsic material is extraneous and cannot be considered in the Court's analysis of the Motion unless

3

converted to one for summary judgment under Federal Rule 56. There is an exception to the general rule, relied upon in the Motion [p.4, n.1], but that exception is not applicable here. A court may consider documents attached to a motion to dismiss "*so long as they are integral to the complaint and authentic*." <u>Anand v. Ocwen Loan Servicing, LLC</u>, 754 F.3d 195, 198 (4th Cir. 2014) (considering a deed of trust in connection with a motion to dismiss where the plaintiff's claim to quiet title expressly relied on certain provisions of the deed of trust.); <u>see also</u> <u>Blankenship v. Manchin</u>, 471 F.3d 523, 526 n.1 (4th Cir. 2006) ("[The plaintiff] did not attach the Gazette article to his complaint. Nonetheless, we may consider the article even at the Rule 12(b)(6) stage, as (1) it was attached to [the defendant's] motion to dismiss, and *is clearly integral to, and was relied upon in, [the plaintiff's] complaint*; and (2) [the plaintiff] does not dispute its authenticity.") (emphasis added). But where, as here, a motion to dismiss contains factual allegations or attaches a document that is not integral to the complaint, such material should be excluded from the court's analysis. <u>See</u> Fed. R. Civ. P. 12(d).

In the present case, the Motion contains 24 paragraphs of factual allegations, and attaches two exhibits that do not concern the claims alleged in the Complaint. The Motion contains new factual allegations concerning things ranging from a factual interpretation of the circumstances giving rise to the DCC Loan to specific pleadings and resolutions in the state court case currently pending in the Circuit Court for Baltimore County, Maryland. <u>See</u> Motion, at ¶¶ 4, 8, 12–18, 36–38, 42, and 46–47. The Motion even attaches documents pertaining to the closing of the DCC Loan and a "sample" subordination agreement, to which the Debtor is not a party and which does not purport to govern the relationship between the Debtor and DCC. <u>See</u> Motion, Ex. 1 and 2. In effect, DCC seeks a merits resolution of its claims through the Motion and, in

large part, does not actually address whether the Complaint contains sufficient allegations to state a claim, which is all that is required at this early stage.

**B.     The Motion must be denied because each Count of the Complaint states a plausible <u>claim for relief</u>.**

The Complaint alleges sufficient factual allegations to state a claim for each cause of action raised. As detailed below, the Motion does not provide a sufficient legal basis to dismiss any count of the Complaint.

> ***i.     Count I states a valid claim for determination of the validity, priority, or extent of DCC's lien pursuant to 11 U.S.C. § 506(d).***

The Motion opens with the argument that the cause of action asserted in Count I of the Complaint to determine the validity, priority, and extent of DCC's secured claim cannot be maintained because DCC has not yet filed a proof of claim. As should be expected from such an unsound argument, the case law, including the two cases cited by DCC, offers no support for any such interpretation of the Bankruptcy Code and Bankruptcy Rules.

Count I seeks a determination of the validity, priority, and extent of DCC's secured claim pursuant to section 506(d) of the Bankruptcy Code. Section 506(d) provides that, absent exceptions not relevant here, "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

As an initial matter, DCC has repeatedly asserted that it maintains a first-priority, senior secured lien on the Debtor's assets, and DCC has been the most active creditor in the Debtor's bankruptcy case, by far [Main Case, Doc. Nos. 21, 44, and 94–98] (filing 7 objections to various relief sought in the less than 2 months this case has been pending, including 5 objections to multiple motions to assume or reject contracts). DCC's assertion that Count I should be dismissed because DCC has not filed a proof of claim is thus contradicted by the indisputable fact that DCC claims to be a creditor in this case and fully intends to assert all of its rights as an

allegedly secured creditor.  The bar date has been set for May 23, 2023,[4] and it would be quite surprising if DCC were to choose not to file a proof of claim before then.  Moreover, even if DCC did not file a proof of claim (which it assuredly will), section 501(c) of the Bankruptcy Code permits the Debtor to file a proof of claim on DCC's behalf, which would abrogate DCC's entire argument, if it had any merit.  DCC apparently asks this Court to dismiss Count I of the Complaint until the bar date (or until the Debtor files a proof of claim on DCC's behalf), at which point the Debtor, DCC, and this Court would then begin this exercise anew.  That would be a waste of time and resources and is not required.

Even the two bankruptcy court cases in other jurisdictions which the Motion cites for this argument do not support DCC's position.   DCC first cites, without any discussion, the case of In re Dembo, 126 B.R. 195 (Bankr. E.D. Pa. 1991) ("***Dembo***") [Motion, at p. 9, ¶ 30].  Dembo was a Chapter 7 case in which the debtor filed a complaint against a mortgagee and the IRS to limit the amount of the defendants' claims to the alleged value of the debtor's home. Id. at 196–97. Unlike the present case, the complaint was filed not only after the expiration of the bar date but also after the expiration of the time when the debtor could have filed proofs of claims on behalf of the creditors. Id.  Making the case even more distant from the present proceeding, the court observed that "the crux of the dispute over the status of the IRS's lien, in the context of a § 506 complaint, is between CFS and the IRS, and that the Debtor is a bystander whose Home would be subject to the same total of $20,000 of liens irrespective of the outcome of this proceeding." 126 B.R. at 197. This was not a situation, like here, where resolution of the defendant's lien

---

[4] While the Motion asserts that no bar date is set [Motion, at p. 8, ¶ 27], the bar date was set for May 23, 2023.  [Main Case, Doc. No. 5].

would have a material impact on distributions to the entire field of secured and unsecured creditors, as well as equity holders.

Moreover, the court's determination in <u>Dembo</u> was at the trial stage, __*not*__ the motion to dismiss stage. <u>Id.</u> at 202 (entering judgment). The court's section 506 determination came after not only the bar date, but after the debtor had received its discharge under Chapter 7. <u>Id.</u> at 196. In other words, the court was determining the merits of the section 506 claim for final resolution based on the parties' evidence and briefing, not whether the adversary complaint sufficiently stated a claim for relief under to Fed. R. Civ. P. 8. At the merits stage, it was necessary that a proof of claim had been filed in that case because all bar dates for filing a proof of claim by or on behalf of a creditor had expired. <u>Id.</u> at 196–97. But that has no bearing on whether a claim under section 506 should be dismissed at the pleading stage just because a proof of claim has not yet been filed where the bar date has not passed.

The Motion also relies on <u>In re Painter,</u> 84 B.R. 59 (Bankr. W.D. Va. 1988) ("__*Painter*__"). There, like in <u>Dembo,</u> the court was considering a claim under section 506(d) __*after*__ the bar date. <u>Id.</u> at 62. The court explained that the adversary complaint, which itself could serve as an "assertion of a claim," did not qualify as such because the adversary complaint also was not filed until after the bar date. <u>Id.</u> While the court in <u>Painter</u> was evaluating a motion to dismiss, the circumstances are nevertheless materially distinguishable because the time for any party in interest to file a proof of claim had passed. <u>Id.</u> This makes <u>Painter,</u> like <u>Dembo,</u> of no conceivable relevance to the present case. This was recognized by a decision of the District Court presiding over the <u>Painter</u> bankruptcy court, which held that <u>Painter</u> does not apply where the debtor files the complaint challenging the creditor's secured claim prior to the expiration of the bar date. <u>See</u> <u>Warthen v. Smith (In re Smith)</u>, 247 B.R. 191, 197 (D. W.D. Va. 2000). In the

present case, the bar date is nearly two months away, and there is no question that a claim will be filed by DCC or by the Debtor on behalf of DCC.

It is worth further noting that the majority of courts do not follow the approach suggested in Dembo and Painter. The "better view," as explained by Collier, is the one held by the majority of courts, "which do not require that a proof of claim be filed prior to lien avoidance under section 506(d)." 4 Collier on Bankruptcy P 506.06 (cataloguing cases, including the Fourth Circuit case, Burkhart v. Grigsby, 886 F.3d 434 (4th Circ. 2018) ("**_Burkhart_**")). Regardless of the approach taken, however, the fact remains that the instant Motion seeks to dismiss Count I on a legal basis that is only applicable, if at all, at the trial stage and only **_after_** the bar date for filing claims has expired.

DCC's legal argument contradicts not only legal principles, it also fails to recognize that Count I asks this Court to determine the following: (1) whether DCC has a valid claim; (2) the priority of DCC's claim compared to other secured and unsecured creditors; and (3) the amount (i.e., extent) of DCC's allowable claim. Count I thus invokes "the bankruptcy court's broad power over claim allowance". Burkhart, 886 F.3d at 439. This inherently states a valid cause of action under section 506(d), regardless of whether a proof of claim has yet to be filed. See 11 U.S.C. §506(d)(2).

> ii.    ***Count II states a valid objection to allowance of DCC's claim under 11 U.S.C. § 502(b) pursuant to Bankruptcy Rule 3007.***

DCC argues that this Court should dismiss the Count II of the Complaint objecting to the allowance of DCC's claim under section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007. DCC does not even attempt to argue that Count II is lacking in terms of sufficiency of pleading a valid cause of action. Instead, DCC argues that Count II is premature. DCC cites a few cases purportedly supporting this dubious argument, but none apply here.

In In re DHP Holdings II Corp., 435 B.R. 220 (Bankr. D. Del. 2010), the debtors filed an adversary proceeding to collect amounts owed for the debtors' prepetition invoices to the defendant, coupled with a request for turnover of property under section 542 of the Bankruptcy Code. The court held that the cause of action for turnover under section 542 was premature because the debtors did not yet have a judgment against the creditor. 435 B.R. at 225–26. This case has no relevance here, as the Complaint does not include a request for turnover under section 542.

Similarly, the case of In re Worldwide Direct, Inc., No. 99–108, 2000 WL 33712474 (Bankr. D. Del. Nov.22, 2000) ("**_Worldwide_**"), concerned a cause of action not relevant to the present case. In Worldwide, the debtor filed an objection to a creditor's proof of claim based on section 502(d) on the theory that the defendant had received a preferential payment avoidable under section 547. The court held that the debtor must first file a complaint to avoid the alleged preference before invoking section 502(d) as a basis to disallow the claim. Id. at *1.[5]

In contrast to section 502(d), section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim where "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." On this point, the Complaint asserts that:

> Prior to the Petition Date, the Debtor fully paid all valid amounts due to DCC under the DCC Loan. To the extent DCC asserted claims for any additional amounts allegedly due to DCC, those claims were false, invalid, and fraudulent, and inconsistent with the terms of the parties' loan agreements.

---

[5] While irrelevant to the present case, Worldwide is well worth reading for its entertainment value, as the Honorable Mary Walrath penned the opinion in rhyme.

Complaint, at ¶ 41.  Grounds for disallowance of DCC's claim are further set forth in the Complaint at Paragraphs 16 – 35.  Accordingly, Count II clearly states a viable claim for relief on the grounds that DCC's alleged claim is unenforceable against the Debtor under applicable law and the agreement between the parties.

### iii.  Count III states a valid claim for avoidance of incurrence of debt as fraudulent pursuant to 11 U.S.C. §§ 544 and 550.

The Motion argues that Count III, which seeks to avoid DCC's claim as a fraudulent incurrence of debt under section 544 of the Bankruptcy Code and applicable Maryland law, fails to state a claim for which relief can be granted because DCC made its loan to the Debtor more than 3 years before the Petition Date.  Motion, ¶ 34.  That argument is wrong as a matter of law.

Section 544(b) provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." 11 U.S.C. §544(b).  Section 544(b) requires four elements: (1) a creditor, (2) holding an allowable unsecured claim; and (3) a transfer of an interest of the debtor in property or incurrence of debt, (4) that is voidable under applicable state law. Lyon v. Eiseman (In re Forbes), 372 B.R. 321, 330, (6th Cir. BAP 2007).  The "creditor holding an allowable unsecured claim" is often known as the "triggering creditor."  See, e.g., In re McGee, No. 05-33727PM, 2007 WL 1728710, at *1 (Bankr. D. Md. June 12, 2007).

Under section 544(b), the plaintiff "stands in the shoes" of the triggering creditor.  This means that "if the actual creditor could not succeed for any reason—whether due to the statute of limitations, estoppel, res judicata, waiver, or any other defense—then the trustee is similarly barred and cannot avoid the transfer." In re Equipment Acquisition Resources, Inc., 742 F.3d 743, 746 (7th Cir. 2014); accord In re Acequia, Inc., 34 F.3d 800, 809 (9th Cir. 1994) ("[l]ike

10

Prometheus bound, the trustee is chained to the rights of creditors"). Conversely, the plaintiff under section 544 succeeds where the triggering creditor would succeed and is entitled to raise any argument the triggering creditor could raise.

In arguing that the Debtor's claim under section 544 of the Bankruptcy Code is subject to the three-year statute of limitations applicable to Title 15 of the Commercial Law Article of the Annotated Code of Maryland, Section 15-201 *et seq.* (the "**MUFCA**"), DCC ignores the nature of claims under section 544 and the import of Maryland's "discovery rule." In essence, the impact of the "discovery rule is to effectively toll a limitations period where a plaintiff does not or cannot discover that the wrong has occurred until sometime after the wrong is committed. Stated conversely, ***a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong***.") (emphasis added); In re McLean, 498 B.R. 525, 535 (Bankr. D. Md. 2013) ("***McLean***") ("The discovery rule exists in both Maryland statutory and common law."). The "plaintiff" in question for purposes of the discovery rule is not the Debtor, but the owner of the underlying claim, i.e., the triggering creditor. This means that the question is not when the Debtor knew or reasonably should have known about the DCC Loan and its terms, but when the triggering creditor(s) knew or reasonably should have known about the DCC Loan and its terms.

It is axiomatic that the Court must look to the triggering creditor for purposes of determining the statute of limitations and the discovery rule. It is the triggering creditor's claims and defenses to which the Debtor (or trustee) succeeds for purposes of section 544 once the petition is filed. In McLean, this Court looked to whether the triggering creditor knew or should have known about the circumstances of the allegedly fraudulent transfer in determining whether the discovery rule applied. 498 B.R. at 535. There the Court cited In re Bernard L. Madoff Inv.

11

<u>Sec. LLC</u> for the proposition that use of the discovery rule requires the debtor or trustee to show that the fraudulent transfer was either "(1) not discovered, and could not have been discovered with reasonable diligence, ***by at least one unsecured creditor;*** or (2) was only discovered, and could have only been discovered with reasonable diligence, ***by at least one unsecured creditor*** within two years of the Filing Date."  445 B.R. 206, 232 (Bankr. S.D.N.Y. 2011) ("***Madoff***"); <u>Id.</u> at 535 n.54.  The knowledge imputed to the Debtor is therefore of no relevance.  Accordingly, because there are numerous unsecured creditors listed on the Debtor's schedules who were also creditors at the time the DCC Loan was executed (Complaint, at ¶ 50), the Court must analyze the applicability of the discovery rule from the perspective of those unsecured creditors, not the Debtor.

While this is a mixed issue of law and fact, not ripe for adjudication at the motion to dismiss stage, <u>Madoff</u>, 445 B.R. at 234–35, it is worth noting that a number of the Debtor's creditors at the time of the DCC Loan were ordinary trade creditors.  There should be no serious question about whether a trade creditor would have known, or could have known, about the circumstances of the DCC Loan and the inclusion of the outsized exit fees—they could not.  The Debtor's trade creditors did not have, and do not have, financial disclosure rights and would have no way of knowing about the Debtor's secured and unsecured loans.  Moreover, these trade creditors, any one of whom could serve as the triggering creditor for purposes of section 544, would have had no way of knowing the Debtor was insolvent at the time of the DCC Loan.  Because the creditors could not have known about the terms of the loan obligations incurred by the Debtor to DCC or the Debtor's insolvency, they could not have known of the possible applicability of the MUFCA.  The fraudulent conveyance action therefore did not accrue as to the unsecured creditors until much later, perhaps not until the filing of the bankruptcy petition.

Accordingly, the discovery rule applies and the statute of limitations has not expired with respect to the Debtor's claim under section 544(b) and MUFCA. Count III of the Complaint therefore states a viable claim for relief not subject to dismissal.

> ### iv.    Count IV states a valid claim for equitable subordination of DCC's claims pursuant to 11 U.S.C. § 510(c).

The Debtor has properly stated a claim for equitable subordination of DCC's claim. This Court recognizes a three-factor test to determine when equitable subordination is appropriate:

> (1) The claimant must have engaged in some type of inequitable conduct;
>
> (2) The conduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and
>
> (3) Equitable subordination must not be inconsistent with the provisions of the Bankruptcy Act.

Atlantic Builders Group, Inc. v. Old Line Bank (In re Prince Fredrick Inv., LLC), 516 B.R. 778, 782–83 (Bankr. D. Md. 2014), *as amended* (Sept. 9, 2014); see also In re Wilson, 359 B.R. 123, 138 (Bankr. E. D. Va. 2006)).

DCC seizes on language in the caselaw requiring that inequitable conduct must "shock the conscience," but courts in this jurisdiction have explained that "shocking" conduct sufficient for equitable subordination means "any conduct, even if technically lawful, ***which violates rules of fair play or good conscience [that] can be deemed inequitable***." Stratton v. Equitable Bank, N.A., 104 B.R. 713, 730 (D. Md. 1989), aff'd, 912 F.2d 464 (4th Cir. 1990). Indeed, inequitable conduct can include "a secret or open fraud . . . an unjust enrichment, not . . . by astuteness or business acumen, but enrichment through another's loss brought about by one's own unconscionable, unjust, unfair, close or double dealing or foul conduct." In re Beverages International, Ltd., 50 B.R. 273, 281 (Bankr. D. Mass. 1985) (quoting In re Harvest Milling Co., 221 F. Supp. 836, 838 (D. Ore. 1963)).

Contrary to DCC's arguments, the Complaint sufficiently alleges a course of conduct by DCC that demonstrates extremely inequitable conduct that was harmful to both the Debtors and its other creditors.  Specifically, in the months leading up to the maturity date of the DCC Loan, DCC actively encouraged the Debtor to obtain financing from other creditors for purposes including the payoff of the DCC Loan.  Complaint, at ¶¶ 23–25.  However, promptly after the Debtor advised DCC of its intention to issue a warrant instead of paying an Exit Fee of $7,500,000 in cash, DCC pursued an egregious course of action that included (1) fabricating defaults by, among other things deliberately not withdrawing the monthly payment from the Debtor's bank account as it previously had consistently done since the loan was made; (2) closing its bank account and opening a new bank account without letting the Debtor know to prevent the Debtor from being able to wire payments to DCC, including the final payoff payment; (3) refusing to communicate with the Debtor about the form of the warrant; (4) issuing a notice of default based on fabricated defaults for the purpose of preventing the Debtor from exercising its option to issue the warrant instead of a cash Exit Fee payment; and (5) taking actions to prevent the Debtor from having access to additional loans and capital to pressure the Debtor to succumb to DCC's pressure campaign.  Complaint, at ¶¶ 26–33.

The issue on this Motion to Dismiss is not the merits of the claims, it is whether the facts alleged in the Complaint could support a claim for equitable subordination if they are proven. DCC cites its subordination agreements, facts outside of the Complaint, as proof that it did not take unfair advantage of other creditors.  Aside from the fact that the subordination agreements are irrelevant to the Complaint and therefore not properly before the Court, the import of the subordination agreements—including which creditors were subject to such agreements and which were not—is a factual determination for the Court at trial.  In any event, the allegations

14

against DCC are more than sufficient to state a claim for equitable subordination under section 510(c). Count IV therefore states a viable claim for relief.

### v. Count V states a valid claim for breach of contract and breach of the covenant of good faith and fair dealing.

Count V of the Complaint states a cause of action for breach of contract and the covenant of good faith and fair dealing. As stated in Count V, the Debtor had the contractual right, upon payment in full of the principal and interest due under the DCC Note, to provide an Exit Fee in the form of a warrant instead of a cash payment. The Complaint specifically states that the Debtor had the option of issuing a warrant, and that consistent with the terms of the DCC Note, the Debtor issued a warrant in compliance with the terms of the DCC Loan agreements. Complaint, at ¶¶ 56–59.

Count V also incorporates by reference the preceding allegations in the Complaint. These include the fact that in the Spring of 2020, the Debtor paid DCC in full and fulfilled its obligations to issue to DCC the DCC Warrant to complete its obligations under the terms of the $3 million loan provided by DCC. Complaint, at ¶ 4. The Complaint further states that when the Debtor attempted to discuss with DCC the form of the DCC Warrant, as expressly required by the terms of the DCC Note, DCC breached its contractual obligation to negotiate with the Debtor in good faith with respect to the terms of the DCC Warrant, in breach of both the parties' contract and the covenant of good faith and fair dealing. Complaint, at ¶ 26. The Complaint also specifically alleges that DCC breached the terms of the DCC Loan agreements by its conduct. Id. The Complaint describes DCC's course of conduct which was designed by DCC to sabotage the Debtor's payoff of the DCC Note, which included DCC's issuance of a Notice of Default falsely alleging defaults that were fabricated by DCC. Complaint, at ¶¶ 27–30.

15

DCC argues that Count V somehow fails to state a claim due to section 9.2 of the DCC Loan Agreement. Section 9.2, however, is nothing more than a limitation of liability provision that purports to limit DCC's liability for claims asserted by the Debtor to the outstanding principal balance of the loan. However, section 9.2 expressly excludes claims based on willful misconduct or gross negligence of DCC. The Complaint includes multiple allegations of DCC's willful misconduct. Complaint, at ¶¶ 26, 28, 30, 57, 60, 62–63. While DCC disputes that its conduct was sufficiently egregious to constitute willful misconduct or gross negligence, such a determination depends on the facts and circumstances of each case and is a question of fact to be determined at trial, not on a motion to dismiss. See Cooper v. Rodriguez, 443 Md. 680, 708–09 (2015); see also Barbre v. Pope, 402 Md. 157, 189 (2007) (gross negligence is construed liberally at the motion to dismiss stage).

Moreover, as a matter of law, an exculpatory clause that provides for waiver or limitation of claims based on willful misconduct is unenforceable. Wolf v. Ford, 335 Md. 525, 531 (Md. 1994 (citing Restatement, Second, Contracts §195(1)). A second ground for courts to refuse to enforce an exculpatory clause is when it is "the product of grossly unequal bargaining power." Id. Both of these grounds apply here, as the Complaint asserts claims based on DCC's willful misconduct in breach of the parties' agreements, and also asserts that the Debtor, at the time it entered into the DCC Loan agreements, was facing severe liquidity issues. Complaint, at ¶ 16.[6] Accordingly, section 9.2 of the DCC Loan Agreement does not bar the Debtor's breach of contract claim against DCC.

DCC cites two cases as the legal grounds for dismissal of Count V, neither of which has any relevance here. DCC refers to Enfield Equip. Co. v. John Deere Co., 64 F. Supp. 2d 483 (D.

16

Md. 1999) for the proposition that a claim based on breach of implied covenant of good faith is not available if the contract includes express terms barring the type of claim asserted. There is no need to debate this legal point as the DCC Loan agreements contain no provision expressly barring the claims asserted in Count V of the Complaint.

The second case relied on by DCC, Baker v. Sun Co., 985 F. Supp. 609, 610 (D. Md. 1993) ("***Baker***"), is cited in support of the proposition that Maryland law does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. Motion, at ¶ 41. This case offers no support for DCC's argument. First, Baker confirms that Maryland recognizes that "every contract imposes a duty of good faith and fair dealing in its performance." 985 F. Supp. at 610. Second, Count V is not based on an independent cause of action for breach of the implied covenant of good faith and fair dealing untethered to a breach of contract claim. Instead, Count V asserts detailed allegations concerning the actions DCC took in breach of the DCC Loan agreements, including breach of Paragraph 1.5 of the DCC Note. Paragraph 1.5 provided that the form and substance of the DCC Warrant were to be acceptable to DCC in DCC's "sole discretion **exercised in good faith**." (Emphasis added). DCC breached this obligation by refusing even to discuss the DCC Warrant with the Debtor. Complaint, at ¶ 26. This is more than sufficient to allege under Maryland law a breach of the covenant of good faith and fair dealing. And Maryland law clearly recognizes that such a "[b]reach of the covenant may be alleged as part of an action for breach of contract." Waypoint Mgmt. Consulting, LLC v. Krone, 2022 WL 2528465, at *44 (D. Md. July 6, 2022).

DCC attempts to justify its actions by alleging in its Motion that the Debtor was in default at the time it paid off the DCC Loan, based on the Debtor having obtained millions of

_____

[6] DCC even asserts in its Motion that the Debtor "needed financial rescue". Motion, at ¶ 4.

dollars of loans, the proceeds of which were used in part to pay off the DCC Note, because the new lenders did not sign a formal subordination agreement. The flaws in DCC's arguments include that it is based on disputed facts outside of the Complaint. In particular, as the Complaint explains, the Debtor was in frequent communications with DCC about the funding from subordinated lenders and DCC, through its representative Jim Plack, who was fully supportive of the Debtor obtaining these loans and by his conduct approved the loans, which as a matter of law were subordinate to DCC's loan in any event. Complaint, at ¶¶ 23–25.

As the Complaint also confirms, DCC only issued a Notice of Default **after** the Debtor informed DCC that the Debtor was electing to issue the DCC Warrant instead of paying the Exit Fee in cash. Complaint, at ¶ 28. The Notice of Default asserts a number of defaults, all of which the Debtor disputed and maintains were false and fabricated in an attempt by DCC to eliminate the Debtor's option to issue the DCC Warrant instead of paying the Exit Fee in cash. Complaint, at ¶¶ 28–29. Most significantly, the Notice of Default did ***not*** include the alleged default DCC now features in its Motion as the main grounds for its position that an event of default occurred before the payoff. See Motion, at ¶ 42. In other words, even though DCC knew about the junior loans the Debtor obtained to pay off the DCC Note before it issued the Notice of Default, it did not include the failure to obtain a written subordination agreement from the junior lenders as an event of default. If DCC had included the junior loans as an event of default, under the terms of the DCC Loan Agreement, the Debtor would have had 45 calendar days to remedy the default. DCC Loan Agreement, ¶ 7.1(d).[7] Because the Debtor never issued a written notice of default

---

[7] Paragraph 7.1(d) of the DCC Loan Agreement provides: "Violation of Negative Covenant. Borrower violates any of the negative covenants set forth in section 6 of this Agreement; provided, however, that a violation of section 6.6(d) of this Agreement shall only constitute an Event of Default if such violation remains uncured for 45 calendar days." DCC now rests its

based on obtaining junior loans, DCC was not entitled to exercise any remedies conditioned on an event of default not being cured after due notice.

In sum, Count V clearly states valid causes of action against DCC for breach of contract and breach of the covenant of good faith and fair dealing which are consistent with the terms of the DCC loan agreements and applicable law.

### vi. Count VI states a valid claim for DCC's wrongful and intentional interference with the Debtor's business relations.

Count VI of the Complaint asserts that DCC, after being paid in full, wrongfully issued letters to dozens of the Debtor's other creditors who had invested or made junior loans to the Debtor, in which DCC falsely represented that the Debtor had failed to pay off the DCC Note, which had the effect of cutting off and destroying potential sources of additional capital. Complaint, at ¶¶ 62–63.

DCC argues that the Complaint fails to state sufficient facts to sustain a claim for tortious interference with the Debtor's business relationships. The error in DCC's argument is based on a misreading of the law. The Debtor agrees on the elements of the cause of action. As DCC states, the claim requires allegations "(1) that the defendant has committed intentional and willful acts; (2) calculated to cause damage to the plaintiff in its lawful business; (3) done with the unlawful purpose of causing such damage, without right or justification; and (4) that actual damage has resulted from those acts. Fare Deals, Ltd. v. World Choice Travel.com, Inc., 180 F. Supp. 2d 678, 691 (D. Md. 2001). Count VI includes allegations satisfying all of these requirements.

---

argument that the Debtor was in default before the payoff in violation of Paragraph 6.6 of the DCC Loan Agreement, one of the 'NEGATIVE COVENANTS" in section 6, which prohibited additional debts subject to the various permitted exceptions listed in that section.

First, the Complaint alleges that DCC's actions in sending letters to the Debtor's other investors and junior creditors was done with the intention of pressuring the Debtor to succumb to DCC's desire to receive the Exit Fee in cash rather than through the DCC Warrant. Complaint, at ¶ 62. Second, the Complaint alleges that DCC took these actions for the purpose of causing the Debtor harm by cutting off and destroying potential sources of additional capital. Id. Third, the Complaint states that DCC had no right to send the default and demand letters to the Debtor's investors because DCC had paid off the DCC Note and was not in default. Complaint, at ¶¶ 31–32. Fourth, DCC's actions caused harm to the Debtor by preventing the Debtor from raising additional capital needed to fund its business operations. Complaint, at ¶ 63.

Accordingly, DCC's argument with respect to Count VI fails to recognize that the Complaint includes allegations meeting all of the requirements to maintain a cause of action for tortious interference with the Debtor's business relations. In straining to attempt to contradict the allegations in the Complaint, DCC asks the Court to consider subordination agreements between DCC and certain junior creditors of the Debtor, which would require the Court to consider alleged facts outside the pleadings and beyond the scope of a proper Federal Rule 12(b)(6) analysis.

As explained above, the purpose of a motion to dismiss is "to test the sufficiency of a complaint; 'importantly, [a Federal Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). At this early stage, there is no basis for the Court to determine the factual issues relating to whether DCC had any legitimate basis to send the letters at issue to the creditors who received the letters, and the harm caused to the Debtor as a result of DCC's actions. In sum,

20

Count VI more than meets the requirements to state a valid claim for tortious interference with the Debtor's business relations.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Motion fails to demonstrate that as a matter of law any of the Counts of the Complaint fail to state a claim for which relief can be granted.  The Motion therefore should be denied in its entirety.

Dated: March 30, 2023

**COLE SCHOTZ P.C.**

/s/ *Gary H. Leibowitz*
Gary H. Leibowitz (Bar No. 24717)
Irving E. Walker (Bar No. 00179)
H.C. Jones III (Bar No. 20064)
300 East Lombard Street, Suite 1111
Baltimore, MD 21202
(410) 230-0660
(410) 230-0667 (fax)
gleibowitz@coleschotz.com
iwalker@coleschotz.com
hjones@coleschotz.com

*Counsel for Debtor and Debtor-In-Possession, Plaintiff*

21

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2023, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the *Plaintiff's Opposition to Democracy Capital Corporation's Motion to Dismiss Debtor's Complaint (1) to Determine Validity, Priority, or Extent of Lien Pursuant to 11 U.S.C. § 506(d); (2) Objection to Allowance of Claim Pursuant to Bankruptcy Rule 3007; (3) for Avoidance of Incurrence of Debt as Fraudulent Pursuant to 11 U.S.C. §§ 544 and 550; (4) for Equitable Subordination Pursuant to 11 U.S.C. § 510(c); (5) for Monetary Damages for Breach of Contract; and (6) Intentional Interference With Business Relations and for Related Relief* (the "Opposition") will be served electronically by the Court's CM/ECF system on the following:

J. Dan Ford, Assistant United States Trustee
Office of the United States Trustee
101 West Lombard Street, Suite 2625
Baltimore, MD 21201

Hugh M. Bernstein, Assistant United States Trustee
Office of the United States Trustee
101 West Lombard Street, Suite 2625
Baltimore, MD 21201

Gerard R. Vetter
Assistant U.S. Trustee
Office of the U.S. Trustee
101 West Lombard Street, Suite 2625
Baltimore, MD 21201

Joyce A. Kuhns, Esq.
Offit Kurman, P.A.
300 E. Lombard Street, Suite 2010
Baltimore, MD 21202

I further certify the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  March 30, 2023

**COLE SCHOTZ P.C.**

By:  */s/ Gary H. Leibowitz*
Gary H. Leibowitz (Bar No. 24717)
300 East Lombard Street, Suite 1111
Baltimore, MD  21202
(410) 230-0660
(410) 230-0667 (fax)
gleibowitz@coleschotz.com

*Counsel for Debtor and Debtor-In-Possession*

65577/0002-44917884v4