Entered: March 29th, 2024
Signed: March 29th, 2024
**SO ORDERED**



Nancy V. Alquist
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | |
|---|---|
| In re:<br><br>Tessemae's LLC,<br><br>    Debtor. | Case No. 23-10675 (NVA)<br><br>Chapter 11 |
| Tessemae's LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Democracy Capital Corporation,<br><br>    Defendant. | Adversary Proceeding No. 23-00039 |

**MEMORANDUM ORDER DENYING
DEMOCRACY CAPITAL CORPORATION'S MOTION TO DISMISS [ECF NO. 4]**

Tessemae's LLC (the "Debtor") initiated this adversary proceeding shortly after filing its chapter 11 petition. Through the adversary complaint, the Debtor seeks to void, disallow, or subordinate the claims of Democracy Capital Corporation ("Democracy") because, the Debtor alleges, Democracy engaged in wrongful and bad faith conduct surrounding the Debtor's attempts to payoff the loan underlying the claims, and attempted to thwart the Debtor's exercise

1

of its contractual right to issue a warrant in lieu of paying the creditor an exit fee. Democracy has moved to dismiss the Debtor's adversary complaint.

The parties have been in litigation for years regarding these and related issues. A Maryland state court only recently has issued a ruling on a pending summary judgment motion that was filed more than two years prior to the filing of the bankruptcy case. Meanwhile, the Debtor has now successfully concluded the sale of substantially all of its assets in the context of its chapter 11 case, and has filed a plan of liquidation. Given the relative size of Democracy's claim, the resolution of this adversary proceeding is now a primary focus of the Debtor in the bankruptcy case.

For the reasons discussed, and based on the papers filed, the hearing conducted, and the entire record in this case, the Court determines that each of the six counts of the adversary complaint states a cause of action sufficient to survive Democracy's motion, and the motion to dismiss is denied.

## THE PLEADINGS

Before the Court is Democracy's Motion to Dismiss Debtor's Complaint (1) to Determine Validity, Priority, or Extent of Lien Pursuant to 11 U.S.C. § 506(d); (2) Objection to Allowance of Claim Pursuant to Bankruptcy Rule 3007; (3) for Avoidance of Incurrence of Debt as Fraudulent Pursuant to 11 U.S.C. §§ 544 and 550; (4) for Equitable Subordination Pursuant to 11 U.S.C. § 510(c); (5) for Monetary Damages for Breach of Contract; and (6) Intentional Interference with Business Relations and for Related Relief (the "Motion" or the "Motion to Dismiss") [AP ECF No. 4]. Democracy moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] to dismiss each of the six counts of the Debtor's complaint (the "Complaint")

---

[1] Rule 12(b)(6) of the Federal Rules of Civil Procedure is incorporated into the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that govern this adversary proceeding at Bankruptcy Rule 7012.

2

[AP ECF No. 1].[2]  The Debtor filed an Opposition to Democracy's Motion to Dismiss (the "Opposition"), and a Supplemental Memorandum in Opposition to Motion to Dismiss (the "Supplemental Memorandum")[3].  [AP ECF Nos. 8, 12].  The Court held a hearing on the Motion on January 30, 2024 (the "Hearing").

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; 'it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Hall v. Greystar Mgmt. Servs., L.P.,* 637 Fed. Appx. 93, 99 (4th Cir. 2016) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  A Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those allegations in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.  *See Republican Party*, 980 F.2d at 952; *see also Ashcroft v. Iqbal*, 556 US. 662, 667 (2009) (stating that to survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ibarra v. U.S.*, 120 F.3d 472, 474 (4th Cir. 1997) ("Regarding dismissal under Rule 12(b)(6), we accept the well-pled allegations of the complaint as true, and we construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.").

---

[2] Citations to the docket in the Adversary Proceeding are cited as "AP ECF. No. __."  Citations to the docket in the "main" chapter 11 case are cited as "Bankr. ECF. No. __."

[3] At the Hearing, counsel for Democracy asserted that Democracy considers the Supplemental Memorandum to have been improperly filed, inasmuch as Democracy had not filed a reply to the Opposition.  The Court did not strike the paper.

3

A court may consider documents that are incorporated into the complaint by reference or attached to a motion to dismiss, so long as they are integral to the complaint and authentic. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Zsigray v. Cnty. Comm'n of Lewis Cnty., W. Va.*, 709 F. App'x 178, 179 (4th Cir. 2018) (same).

A motion to dismiss under Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred," unless "facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *Reese v. H&S Bakery, Inc.*, 2018 WL 4005226, at *3 (D. Md. Aug. 22, 2018).

Significantly in this case, collateral estoppel and res judicate (preclusion doctrines) constitute affirmative defenses which are inappropriate for disposition under Rule 12(b)(6) unless facts sufficient to permit a ruling are evident in the complaint. *See Ga. Pac. Consumer Prod., LP v. Von Drehle Corp.*, 710 F.3d 527, 533 (4th Cir. 2013); *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."); *see also In re Reecher*, 514 B.R. 136, 153 (Bankr. D. Md. 2014) (explaining that the bankruptcy court must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it, and that res judicata under Maryland law requires a final judgment on the merits).

## ANALYSIS

<u>Counts I and II of the Complaint – The Debtor's Attacks on Democracy's Claim
Under § 506(d) of the Bankruptcy Code[4] and Bankruptcy Rule 3007</u>

In its schedules, the Debtor listed Democracy as the holder of a "disputed" claim.  *See* Amended Schedule D, [Bankr. ECF No. 162].  The Debtor takes the position that Democracy's claim and lien are invalid, and objects to allowance of any claims by Democracy.

Count I of the Debtor's Complaint seeks "Determination of the Validity, Priority, or Extent of [Democracy's] Lien Pursuant to 11 U.S.C. § 506(d)."  In Count II of the Complaint, the Debtor asserts its "Objection to Allowance of [Democracy's] Claim under 11 U.S.C. § 502(b) Pursuant to Bankruptcy Rule 3007."  In the Motion to Dismiss, the only argument raised by Democracy for dismissal of Counts I and II is that they are brought prematurely— because no proof of claim had yet been filed by Democracy in the bankruptcy case.  *See* Motion at ¶¶ 30–31.  However, after the filing of its Motion to Dismiss, Democracy did file two proofs of claim in the bankruptcy case—Claims 67-1 and 68-1 (the "Claims").  Because Claims have now been timely filed, the Court declines to dismiss Counts I and II based on Democracy's Motion.

It is appropriate for the Court to acknowledge that at the Hearing, Democracy raised for the first time that a ruling recently entered in Maryland state court granting summary judgment in favor of Democracy and against the Debtor should have preclusive effect in this case.  The Court considered Democracy's proposal (opposed by the Debtor) that the parties supply supplemental briefing on this point.  The Court declined Democracy's counsel's offer of supplemental briefing with respect to the state court matter, but recognizes that issues related to the state court ruling may be raised by either party at some other point in this adversary

---

[4] 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

proceeding and may be germane to issues in the adversary proceeding. Further, the preclusive effect of the state court ruling is an affirmative defense that is not addressed at all in the Motion, and at least as of the time of the Hearing, the parties acknowledged that the ruling had not been reduced to a final judgment. Accordingly, dismissal of Counts I and II under Rule 12(b)(6) is inappropriate.[5]

Count III – The Debtor's Claim for Avoidance of "Incurrence" of Democracy's Debt<br>Under § 544 and § 550 of the Bankruptcy Code

Democracy argues that Count III of the Debtor's Complaint is time-barred because the Debtor is bound by the "lookback" period under Maryland law,[6] and "the obligations that Tessemae's seeks to avoid were incurred in April 2018, significantly more than three years prior to February 9, 2023, the date of the filing of the Complaint." *See* Motion at ¶¶ 32–34 (citing MD. CTS. & JUD. PROC. § 5-101, 11 U.S.C. § 548, *In re Laurie*, 2008 WL 886121, *4–5 (Bankr. D. Md. Mar. 28, 2008)). In its Opposition, the Debtor agrees that the three-year limitations period applies, but it contends that Maryland's "discovery rule" *also* applies and that the nature of claims under § 544 requires consideration of the claims from the perspective of unsecured

---

[5] By way of background, prior to the filing of the petition, the Debtor and Democracy had been involved in state court litigation for over two years. Democracy sought relief from the stay to allow the state court to decide a summary judgment motion that was pending in the state court as of the petition date, and this Court entered the Memorandum Order Modifying the Automatic Stay [Bankr. ECF No. 196], which granted the limited relief of modifying the stay to allow the state court to rule on the pending summary judgment motion and to hear argument and rule on the pending counterclaim and any defenses thereto in the state court action. On January 2, 2024, Democracy filed an Amended Line Submitting Opinion and Judgment Granting Summary Judgment in Favor of Democracy Capital Corporation and Against Tessemae's LLC and Dismissal of Tessemae's LLC's Counterclaims Against Democracy Capital Corporation in the Circuit Court for Baltimore County Litigation. [Bankr. ECF No. 262]. In this opinion, the Honorable Keith R. Truffer of the Circuit Court for Baltimore County ruled that Democracy's Second Motion for Summary Judgment was granted as to Count I, denied as to Count II, and that Democracy's Motion to Dismiss Tessemae's Counterclaim was granted without leave to amend. *Id*. On January 29, 2024, Democracy filed a Line Submitting the Opinion, Judgment, and Notice of Recorded Judgment Against Gregory Vetter and Genevieve Vetter in the Circuit Court for Baltimore County Litigation. [Bankr. ECF No. 279]. In this opinion, Judge Truffer granted Democracy's motion for reconsideration and granted summary judgment as to Count II against Gregory and Genevieve Vetter. Judge Truffer further stated that the court would, by separate order, enter judgment jointly and severally against all defendants to that case.

[6] The parties entered into the Second Amended and Restated Loan and Security Agreement (the "Loan Agreement") on or about April 10, 2018. Pursuant to Section 9.5 of the Loan Agreement, Maryland law applies.

6

creditors.[7]  *See* Opposition at pp. 10–13 (citing *In re McLean*, 498 B.R. 525, 535 (Bankr. D. Md. 2013).  The Debtor asserts that the Court must look to a triggering creditor for purposes of determining the statute of limitations and the discovery rule under § 544.  The Debtor maintains that the statute of limitations has not expired with respect to the claims in Count III.

The Complaint alleges that § 544(b)(1)[8] and § 550(a)[9] of the Bankruptcy Code, together with Title 15 of the Commercial Law Article of the Annotated Code of Maryland, § 15-201 *et seq.*, are applicable to fraudulent conveyances, and entitle the Debtor to avoid the incurrence of the debt to Democracy and to void any remaining claim Democracy may assert against the Debtor.  Compl. at ¶ 51.  In support of this claim, the Debtor describes its purported insolvency at the time it entered into the Loan Agreement with Democracy, and alleges that Democracy

---

[7] The Debtor also points out that Democracy, for its part, was aware that the Debtor was insolvent at the time of entering into its Loan Agreement with the Debtor.  The Complaint alleges that at the time of the Loan Agreement, the Debtor fully disclosed to Democracy that the Debtor's accounts payable exceeded $4 Million, with just under $3 Million more than 90 days past due, and references Democracy's description of the Debtor's "poor financial health" in the state court complaint.  *See* Compl. at ¶ 20.  The Complaint further alleges that the Debtor's internal balance sheet reflected total liabilities in excess of the book value of its assets by more than $17,000,000.  *Id.*

[8] Section 544(b)(1) of the Bankruptcy Code provides:

> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544.

[9] Section 550(a) further provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
>
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550.

entered into the Loan Agreement with the intention of forcing the Debtor to pay a multiple million dollar exit fee instead of permitting the Debtor to utilize the alternative option of issuing a warrant for stock, which is permitted under the Loan Agreement if particular conditions are met. The Debtor contends it first discovered Democracy's alleged nefarious intent in February 2020, when Democracy issued a notice of default without having a basis for doing so.[10] The Court must, of course, take the Debtor at its word for purposes of the Motion to Dismiss. Taking into account the discovery rule and its relationship to the allegations of the Complaint, the Court is satisfied that Count III contains allegations sufficient to state a plausible claim for relief. In any event, as the Court pointed out, whether a claim is time-barred is an affirmative defense, and the Court deems this an inappropriate instance in which such a claim may be ruled on in the context of a motion to dismiss.

<u>Count IV – The Debtor's Claim for Equitable Subordination of Democracy's Claim Under § 510 of the Bankruptcy Code</u>

In Count IV, the Debtor seeks to equitably subordinate Democracy's claim under § 510(c) of the Bankruptcy Code, which provides:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510. The parties agree that the three-factor test developed by the Fifth Circuit and applied by this District in *In re Prince Frederick Inv., LLC*, 516 B.R. 778 (Bankr. D. Md. 2014),

---

[10] In support of its argument that any statute of limitations defense should be considered from the perspective of unsecured creditors, the Debtor describes the allowable claims held by unsecured creditors in the bankruptcy case.

*as amended* (Sept. 9, 2014) applies here to determine whether the Complaint states a claim for equitable subordination:

> i. The claimant must have engaged in some type of inequitable conduct;
>
> ii. The conduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant;
>
> iii. Equitable subordination must not be inconsistent with the provisions of the Bankruptcy Act.

*In re Prince Frederick Inv., LLC*, 516 B.R. at 782–83.

The parties disagree about what is required to plead "inequitable conduct." In its Motion, Democracy maintains that the Debtor must allege that Democracy "engaged in conduct that 'shocks the conscience' of the court to subject its claim to subordination," and contends that the Complaint does not allege facts demonstrating that Democracy took unfair advantage. *See* Motion at ¶¶ 36–37 (citing *In re Prince Frederick Inv., LLC*, 516 B.R. at 783). The Debtor, citing Fourth Circuit case law, maintains that inequitable conduct means "any conduct, even if technically lawful, which violates rules of fair play or good conscience [that] can be deemed inequitable," and points to allegations in the Complaint regarding Democracy's conduct prior to the maturity date of the loan. *See* Opposition at pp. 13–14 (citing *Stratton v. Equitable Bank, N.A.*, 104 B.R. 713, 730 (D. Md. 1989), *aff'd*, 912 F.2d 464 (4th Cir. 1990)).

The Complaint alleges that Democracy "fabricat[ed] defaults," "clos[ed] its bank account and open[ed] a new bank account without letting the Debtor know to prevent the Debtor from being able to wire payments to [Democracy], including the final payoff payment," "refus[ed] to communicate with the Debtor about the form of the warrant," "issu[ed] a notice of default based on fabricated defaults for the purpose of preventing the Debtor from exercising its option to issue the warrant instead of a cash Exit Fee payment," and took "actions to prevent the Debtor from

9

having access to additional loans and capital to pressure the Debtor to succumb to [Democracy's] pressure campaign." *Id.* at p. 14; Compl. at ¶¶ 23–33.

*Stratton* contemplates that a plaintiff must present evidence of conduct that "shocks the conscience," but "any conduct, even if technically lawful, which violates rules of fair play or good conscience [that] can be deemed inequitable," can establish "inequitable conduct" for purposes of § 510(c). The Court adopts the view and the case law advanced by the Debtor for purposes of this Motion, and, taking the allegations of the Complaint as true at this stage, concludes that the allegations of Count IV are sufficient to plead inequitable conduct, and therefore a claim for equitable subordination. Count IV survives Democracy's Motion to Dismiss.

Count V – The Debtor's Claim Against Democracy for Breach of Contract and Covenant of Good Faith and Fair Dealing

Democracy advances three arguments for why Count V fails to state a claim: (1) that the Complaint does not state an "enforceable" breach of contract or violation of covenant of good faith and fair dealing claim against Democracy (and at the Hearing, counsel for Democracy further argued that the Complaint does not point to any specific contract provisions that purportedly have been breached); (2) that Maryland law (which applies under the Loan Agreement) does not recognize an independent cause of action for breach of an implied covenant of good faith and fair dealing; and (3) that the Debtor has waived its right to assert such claims by virtue of Section 9.2 of the Loan Agreement, which Democracy interprets to have released it from liability upon its acceptance and performance of the Loan Agreement. *See* Motion at ¶¶ 40–43. The Debtor disagrees on all three points.

*"Enforceable" Breach of Contract*

Under Maryland law, "the elements of a cause of action for breach of contract include the existence of a contractual obligation, a material breach of that contractual obligation, and resulting damages." *In re Council of Unit Owners of 100 Harborview Drive Condo.*, 584 B.R. 639, 655 (Bankr. D. Md. 2018) (quoting *Burdyck v. Phoenix Affiliates, Inc.,* 2015 WL 7739737 at *3 (Md. Ct. Spec. App. Dec. 1, 2015)).

Count V of the Complaint very plainly alleges that "the Debtor had a contractual right, upon payment in full of all principal and interest due under the Loan Agreement, to fulfill its contractual obligation to provide an Exit Fee in the form of the [Democracy] Warrant," and cites Sections 1.5 and 7.1(c) of the Loan Agreement in articulating the Debtor's rights and obligations relating to the exit fee and warrant. *See* Compl. at ¶¶ 18, 22, 55–56. Count V further alleges that Democracy failed to comply with the terms of the Loan Agreement when it denied the Debtor an opportunity to cure any alleged defaults, declared a default where there was not a valid default, and refused to communicate with the Debtor to confirm the form of the warrant to be issued. *See* Compl. at ¶¶ 57–59. Count V avers that as a result of these failures, the Debtor incurred substantial damages. *Id.* at ¶ 60. In the Court's view, these allegations of the Complaint contain sufficient factual matter to state a plausible breach of contract claim.

*Independent Cause of Action for Breach of the*
*Implied Covenant of Good Faith and Fair Dealing*

Maryland courts have not explicitly recognized an independent cause of action for breach of a duty of good faith and fair dealing. *Waypoint Mgmt. Consulting, LLC v. Krone*, 2022 WL 2528465, at *44 (D. Md. July 6, 2022). However, Maryland law "recognizes that every contract imposes a duty of good faith and fair dealing in its performance." *Baker v. Sun Co. (R & M)*, 985 F. Supp. 609, 610 (D. Md. 1997) (citing *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 534

(Md. 1964)). Breach of the covenant of good faith and fair dealing may be alleged as *part* of an action for breach of contract, but "there is no duty requiring affirmative steps beyond those required by the contract itself." *Waypoint Mgmt. Consulting, LLC*, 2022 WL 2528465, at *44 (cleaned up).

Count V alleges that Democracy violated its covenant of good faith and fair dealing by prohibiting or attempting to prohibit the Debtor from timely performing its obligations to make payments, to issue the warrant on terms mutually acceptable to the parties, and to otherwise fulfill the Debtor's contractual obligations under the Loan Agreement. *See* Compl. at ¶ 59. The Court accepts the position taken by the Debtor in its Opposition that Count V is not based on an independent cause of action for breach of the implied covenant of good faith and fair dealing, but instead alleges (as part of its claim for breach of contract), that Democracy failed to exercise good faith in performing under the Loan Agreement.

*Waiver of Right to Asserts Claims Pursuant to Loan Agreement*

Democracy's Motion also asserts that, pursuant to Section 9.2 of the Loan Agreement, the Debtor waived its right to assert the claims in Count V.[11] *See* Motion at ¶¶ 40–41. However, Section 9.2 does not appear to the Court to be a waiver provision, but instead appears to be a limitation of liability provision.[12] *See* Loan Agreement at § 9.2 ("…and no claim shall be made by Borrower upon Lender or such employees or agents for or on account of any matter or thing in excess of the outstanding principal balance of the Loan."). Democracy's argument does not defeat the Debtor's Count V claims under Rule 12(b)(6).

---

[11] At the Hearing, counsel for Democracy first raised the argument that Section 7.2(f) of the Loan Agreement, a subsection of the "Remedies of Lender" titled "No Waiver, Etc.," also prevents the Debtor from stating a cause of action for breach of contract. Specifically, counsel argued that any breaches identified by the Debtor cannot be breaches of contract pursuant to the terms of this section.

[12] Section 9.2 not only does not prevent Debtor from bringing this cause of action, but it expressly permits Debtor to bring a cause of action for "gross negligence or willful misconduct." *See* Loan Agreement at § 9.2.

<u>Count VI – The Debtor's Claim for Intentional Interference with Business Relations
Under § 506(d) of the Bankruptcy Code</u>

The parties appear to agree that the elements of a cause of action for Intentional Interference with Business Relations are that "(1) the defendant has committed intentional and willful acts; (2) calculated to cause damage to the plaintiff in its lawful business; (3) done with the unlawful purpose of causing such damage, without right or justification; and (4) that actual damage has resulted from those acts." *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 691 (D. Md. 2001); Motion at ¶ 45; Opposition at p. 19.

In Count VI, the Debtor alleges that Democracy, by "sending letters to dozens of the Debtor's other creditors who had invested in or made junior loans to the Debtor, intentionally interfered with the Debtor's relations with these investors and junior creditors." Compl. at ¶ 62. The Debtor also alleges that Democracy made "false representations that the Debtor had failed to pay off the [Democracy] loan prior to the maturity date, [and] sent these letters to cause the Debtor actual harm and loss by cutting off and destroying potential sources of additional capital and damaging the Debtor's relations with these creditors, with the intention of pressuring the Debtor to surrender to [Democracy's] false claims." *Id*. The Debtor further alleges that "[Democracy's] wrongful conduct, . . . prevented the Debtor from raising capital from third parties that would have enabled the Debtor to fund its business operations and meet its obligations to other creditors." *Id*. at ¶ 63.

Democracy maintains in its Motion to Dismiss that the Complaint does not adequately plead this claim because it has not alleged and cannot allege that Democracy took specific actions with "unlawful purpose." It contends that all of the actions complained of by the Debtor were nothing more than an exercise by Democracy of the remedies available under the Loan Agreement and the Maryland Uniform Commercial Code, and accordingly do not constitute

13

actions taken for an "unlawful purpose." *See* Motion at ¶¶ 46–47. Democracy states (correctly) that it is not enough to allege, as it maintains the Debtor does, that its relationships and reputation were harmed—but it must allege that conduct was "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *See Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 657 (1994). Democracy, however, omits the very next sentence in the decision by the court in *Alexander*, which explains that "[w]rongful or unlawful acts include common law torts and 'violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.'" *Id*. (cleaned up). As noted, the Debtor has alleged in Count V that Democracy made "*false representations*" to others in its letters. Democracy may argue that the Debtor's position is circular – that whether the representation is *false* is determined by contract rights here – but that argument is not for today. It remains for trial to determine what the Debtor may show to be "false representations." The Debtor's allegations are sufficient at this Motion to Dismiss stage. The Debtor's Count VI claim for Intentional Interference with Business Relations survives the Motion to Dismiss, however narrowly.

## CONCLUSION

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Motion to Dismiss [AP ECF No. 4] is **DENIED**.

cc: All parties
      All counsel

**END OF ORDER**